J-S39015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: R-J.C.K. A/K/A R.J.K., L.K., MINORS<br><br>APPEAL OF: R.K. | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br>No. 132 WDA 2017 |

Appeal from the Order Entered December 19, 2016
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s):
CP-02-AP-032-2015
CP-02-AP-033-2015

BEFORE: BENDER, P.J.E., BOWES, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 23, 2017**

R.K. (Father) appeals from the order entered on December 19, 2016, that granted the petition filed by Allegheny County Children, Youth and Families (CYF) to involuntarily terminate his parental rights to R-J.C.K. and L.K. We affirm.

In its opinion, the trial court set forth the history of this case, as follows:

> R[-]J.C.K. was born in November, 2010 to R.R.H. ("Mother"). L.K. was born in October, 2011 to Mother. The birth certificates of both children list R.K. as the Father. The children came to the attention of CYF in 2012 and CYF opened an investigation following reports of domestic violence between Mother and Father, reports that siblings of R[-]J.C.K. and L.K. had suffered physical injuries requiring hospitalization while in parental care, and reports that the interior of the parental home was in such disorderly condition as to present a safety risk. Subsequently,

---

[*] Retired Senior Judge assigned to the Superior Court.

on February 15, 2013, following Mother's reports of domestic violence and ensuing petition for protection from abuse ("PFA") against Father, together with Mother['s] having incurred separate criminal charges, CYF removed the children from the care of their parents and in May, 2016, when R[-]J.C.K. was just over two years old, and L.K. just over one year old[,] CYF placed the children in foster care with a maternal great aunt and uncle, where they continue to reside. [CYF] filed dependency petitions on March 3, 2013, and on March 6, 2013, this [c]ourt adjudicated the children dependent.

### i. First Petition for Termination of Father's Parental Rights

On February 4, 2015, CYF filed petitions for termination of the parental rights of Mother and Father. This [c]ourt conducted a hearing thereon on April 10, 2015. By order dated May 12, 2015, this [c]ourt granted CYF's petition to terminate Mother's parental rights. However, that same day, this [c]ourt entered an order denying CYF's petition to terminate Father's parental rights, concluding that CYF had failed to demonstrate by clear and convincing evidence that grounds for termination of Father's rights existed.

On June 6, 2015, R[-]J.[C.]K. and L.K., through their guardian *ad litem* [(GAL)], filed notices of appeal with the Pennsylvania Superior Court from this [c]ourt's order denying CYF's petition to terminate Father's parental rights. On June 22, 2015, Mother filed a separate notice of appeal from this [c]ourt's order granting CYF's petition to terminate her parental rights. On December 22, 2015[,] … the Pennsylvania Superior Court affirmed this [c]ourt's order denying CYF's petitions to terminate Father's parental rights. Additionally, on December 30, 2015[,] … the Pennsylvania Superior Court affirmed this [c]ourt's order terminating Mother's parental rights.

### ii. Second Petition for Termination of Father's Parental Rights

On June 13, 2016, CYF filed a second petition for termination of Father's parental rights. This [c]ourt conducted a hearing thereon on December 16, 2016. That same day, this [c]ourt entered orders terminating Father's parental rights to R[-]J.C.K. and L.K. Father filed a notice of appeal on January 9, 2017. On January 24, 2017, R[-]J.C.K. and L.K., through their

[GAL], filed an application to quash, which the Superior Court denied without prejudice by order dated February 16, 2017.[1]

Trial Court Opinion (TCO), 3/12/17, at 2-4.

Following the rendition of the history of this case quoted above, the trial court discussed the applicable law and the testimony and documentation presented at the hearing that formed the basis for its conclusion that Father had failed to take the steps necessary to accomplish reunification, *i.e.*, that CYF had proven that Father's parental rights should be terminated pursuant to 23 Pa.C.S. § 2511(a)(2), (5) and (8). Specifically, the court provided an extensive discussion of Dr. Neil Rosenblum's testimony of his interactional evaluation of the children, their foster parents and of Father. TCO at 7-11. The court also discussed the testimony of Sharon Martin, a caseworker for CYF, who corroborated Dr. Rosenblum's testimony, and indicated that during the almost four years that the children were in the care of the foster parents, Father "failed to demonstrate a commitment to providing consistency and stability or an ability to provide long-term parental care and supervision to the children." *Id.* at 12 (citing N.T., 12/16/16, at 44-71). Ms. Martin also indicated that

---

[1] This Court's order, dated February 16, 2017, that denied the GAL's motion to quash, allowed for the quashal issue to be either raised in a party's brief or by filing a new application that would be directed to this merits panel. Nothing has been received in accordance with the February 16, 2017 order. Moreover, a review of the record reveals that Father's appeal was timely filed in that the trial court's order was entered on December 19, 2016, and the appeal was filed on January 19, 2017. *See* Pa.R.A.P. 903(a).

"CYF has no record that Father pursued his family service plan goals which included that he obtain appropriate housing, receive mental health treatment, obtain employment, receive parenting services, and create a stable environment within which the children would be able to reside." *Id.* (citing N.T. at 46).

The court also discussed the testimony of Jessica Clark, director of the care center, who supervised the visits between Father and the children. Furthermore, the trial court provided information gleaned at two permanency review hearings, held on October 28, 2015, and October 17, 2016. The court noted in the year between the two permanency review hearings, "Father failed to take any significant steps towards attaining the security and stability necessary for the children to be placed in his care." *Id.* at 14. The court also found that since denying the first termination petition, "CYF has presented credible evidence and testimony, that, since then, Father's actions (or lack thereof) have hampered efforts at reunification, and strained the already tenuous bond that children had with Father, as evidenced by Father['s] speaking negatively of the foster parents to the children in a manner that threatened the children's sense of safety and stability and negatively impacted their wellbeing." *Id.* Furthermore, in its conclusion, the court stated:

> Based on the foregoing evidence and testimony, this [c]ourt concludes that CYF proved by clear and convincing evidence that termination of Father's parental rights best served the needs and welfare of the children pursuant to § 2511(b). Although a bond exists between Father and the children and Father exhibited an

- 4 -

interest in parenting the children, in reliance on the evidence discussed herein, this [c]ourt found that Father's ongoing parental deficiencies demonstrated an inability or unwillingness to provide for the children's essential parental care, control or subsistence. Moreover, the children lack a parental bond with Father, and rely on their foster parents for their needs. Accordingly, this [c]ourt concludes that children's welfare and needs would be best served by termination of Father's parental rights, and respectfully requests that its December 16, 2016 order be affirmed.

*Id.* at 15.

On appeal, Father raises the following issues for our review:

I. The trial court erred in finding that [CYF] had proved grounds for termination under Pa.C.S.[] [§] 2511(a)(2), (5) and (8)[.]

II. The trial court erred in finding that [CYF] had proved by clear and convincing evidence that the condition which led to the removal of the child[ren] had not or could not be remedied within a reasonable period of time.

III. The trial court erred in finding that [CYF] had proved by clear and convincing evidence that termination of the [Father's] parental rights would best serve the developmental, physical and emotional needs and welfare of the child[ren] as required by Pa.C.S.[] [§] 2511(b).

Father's brief at 6.

We review an order terminating parental rights in accordance with the following standard:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the

- 5 -

record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879

A.2d 802, 805 (Pa. Super. 2005)).  Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The trial court is free to believe all, part, or none of the evidence presented

and is likewise free to make all credibility determinations and resolve

conflicts in the evidence.  *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super.

2004).  If competent evidence supports the trial court's findings, we will

affirm even if the record could also support the opposite result.  *In re*

*Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

We are guided further by the following:  Termination of parental rights

is governed by Section 2511 of the Adoption Act, which requires a bifurcated

analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.  One major aspect of the needs and welfare analysis concerns the nature and status of the

- 6 -

emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *R.N.J.*, 985 A.2d at 276.

With regard to Section 2511(b), we direct our analysis to the facts relating to that section. This Court has explained that:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

The trial court here terminated Father's parental rights pursuant to section 2511(a)(2), (5), (8) and (b). In order to affirm, we need only agree with the trial court as to any one subsection of section 2511(a), as well as section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Father's brief provides argument regarding all three subsections of

section (a).  We have chosen to address and analyze the court's decision to terminate Father's parental rights under section 2511(a)(2) and (b), which provide as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

To satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect, or refusal; (2) such incapacity, abuse, neglect, or refusal caused the child to be without essential parental care, control, or subsistence necessary for his physical or

mental well-being; and (3) the causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

The thrust of Father's argument, relating to section 2511(a)(2), is that "he has substantially remedied the conditions which led to his children being removed." Father's brief at 15. Specifically, Father contends that the family service plan goals, which centered on housing, domestic violence, parenting, and maintaining contact with the children were met. He claims that he no longer has a substance abuse problem, that he has obtained employment and housing and that he has addressed parenting and domestic violence issues. Father also relies on the caseworker's testimony that he has maintained contact with her, has consistently visited with the children, and has acted appropriately during the visits. He further claims that the children have enjoyed the visits and have not exhibited any fear of him. Father also relies on Dr. Rosenblum's testimony that Father had exhibited perseverance in pursuing the relationship with the children despite obstacles. Despite these assertions, Father does acknowledge that he never provided

documentation with regard to employment, housing and his claim that he had addressed parenting and domestic violence issues.

The GAL, in her brief, counters Father's claims by asserting that he has not complied with the goals set for him in order for his reunification with the children. The GAL notes the lack of documentation as to his housing arrangement, indicating that he has lived with relatives throughout the pendency of this case. The GAL also claims that Dr. Rosenblum's report identified various mental health issues and the fact that Father "has not engaged in mental health treatment as he believes it is a waste of time." GAL's brief at 13 (citing N.T. at 20-21). The GAL further contends that Father has not attended domestic violence counseling, despite the fact that he was removed from the family residence by police and incarcerated.

The trial court's opinion, which addresses all three of Father's issues together, sheds light on some of Father's claims, namely, those that concern Father's interaction with the children at the supervised visitations. With regard to R-J.C.K., the court stated that

> Dr. Rosenblum testified that during the evaluations, R[-]J.C.K. "referred to [his foster parents] as mom and dad" and indicated that "R[-]J.C.L. didn't really relate to [Father] as his dad[.]" N.T., 12/16/16, at 10. Rather, R[-]J.C.K. viewed Father as "someone he visits" and with whom he had only a "casual relationship, not a strong attachment," although R[-]J.C.K. did indicate that he enjoyed visiting Father "because he gets candy and can play around and do what he wants." N.T., 12/16/16, at 10, 12.
>
> Dr. Rosenblum further testified that he received reports from foster parents that after R[-]J.C.K.'s visits with Father, R[-

> ]J.C.K. experienced "nightmares and sleep difficulties …
> sometimes wetting his bed in response to visits." More
> specifically, according to Dr. Rosenblum, foster parents and R[-
> ]J.C.K.'s therapist reported to him that following visits with
> Father, R[-]J.C.K. "struggled with a lot of trauma-related
> symptoms … nightmare, sleep difficulties, fear of the dark and
> closets and bugs, and having a lot of crying spells and difficulties
> at the time of his visit[.]" N.T., 12/16/16[,] at 11. Dr.
> Rosenblum indicated that he believed that various factors
> contributed to R[-]J.C.K.'s behaviors, but testified that R[-]J.C.K.
> "is definitely struggling with many symptoms consistent with
> PTSD." N.T., 12/16/16, at 14.

TCO at 7.

The court also discussed some of Dr. Rosenblum's testimony that related to L.K.'s relationship with foster parents and with Father. Specifically the court stated that Dr. Rosenblum testified

> that [L.K.] had "a very strong attachment to her aunt and uncle
> [foster parents] whom she referred to as her mom and dad."
> N.T., 12/16/16, at 15. In contrast, with respect to Father whom
> she referred to as her "other dad", she stated, "I cry. I don't
> want to go to the visits" and indicated resistance to spending
> time with him, although she had difficulty articulating her
> reasons. *Id.* She did state, however, that she enjoyed visiting
> Father because she "enjoys the candy and the games," and Dr.
> Rosenblum testified that L.K. "seemed to paint a mixed picture
> of [Father] saying he's nice but he's also bad" although she did
> assert "clearly … that she does not want to go" to visits with
> Father.

*Id.* at 8.

The court then explained that since the time that it had denied CYF's first petition to terminate Father's parental rights, CYF presented evidence that

> Father's actions (or lack thereof) have hampered efforts at
> reunification, and strained the already tenuous bond that

- 11 -

children had with Father, as evidence by Father['s] speaking negatively of the foster parents to the children in a manner that threatened the children's sense of safety and stability and negatively impacting their wellbeing. [] Moreover, despite having the opportunity to give priority to the task of creating a stable and secure environment for the children to reside with him, Father has neglected to do so. This [c]ourt cannot wait indefinitely for Father to make progress towards being able to parent.

TCO at 14.

Accordingly, the court concluded that CYF carried its burden of proving that grounds for the termination of Father's parental rights existed and that conditions for removal of the children could not be remedied in a reasonable amount of time. The court also concluded that the termination best served the needs and welfare of the children. We agree and note that our review reveals that the record supports the court's findings and conclusions. Father has failed to take advantage of the opportunities provided to him and has failed to convince this Court otherwise. Thus, we conclude that he is not entitled to any relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/23/2017